J David Jackson (admitted *Pro Hac Vice*)
jackson.j@dorsey.com
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Tel: (612) 340-2600; Fax: (612) 340-2868

Kent J. Schmidt (SBN 195969)
schmidt.kent@dorsey.com
Bryan M. McGarry (SBN 258156)
mcgarry.bryan@dorsey.com
**DORSEY & WHITNEY LLP**
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
Tel: (714) 800-1400; Fax: (714) 800-1499

Attorneys for Defendant
SCB & ASSOCIATES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| PETRO-DIAMOND INCORPORATED, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SCB & ASSOCIATES, LLC, a Delaware limited liability company; ABSOLUTE FUELS, LLC, a Texas limited liability company; and DOES 1 through 5,<br><br>Defendants. | CASE NO:  8:12-cv-01893 CJC (ANx)<br><br><u>District Judge</u><br>Hon. Cormac J. Carney<br><br><u>Magistrate Judge</u><br>Hon. Arthur Nakazato<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SCB & ASSOCIATES, LLC'S MOTION IN LIMINE NO. 1 TO EXCLUDE OR LIMIT THE EXPERT REPORT AND OPINION TESTIMONY OF ANDREW LIPOW**<br><br>[Concurrently filed with Notice of Motion and Motion; Declaration of Kent J. Schmidt; and [Proposed] Order]<br><br>Date:        July 7, 2014<br>Time:        3:00 p.m.<br>Courtroom:  9B<br><br>Action Filed:  October 31, 2012<br>FAC Filed:     January 28, 2013<br>Trial Date:    July 15, 2014 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     ARGUMENT...........................................................................................2

       A.     Overview of Lipow's Expert Report.......................................2

       B.     Lipow's Opinions on Reasonable Reliance ...........................4

              1.     The Lipow Deposition Testimony Relating to the
                     Foundation for His Opinions in the Initial Report,
                     including Reasonable Reliance .....................................5

              2.     Lipow's Opinion and Testimony on whether It Was
                     Reasonable for PDI to Rely on SCB's Statements Is
                     Inadmissible .................................................................7

                     a.     Lipow's Opinion Does Not Assist the Jury in Making a
                            Determination on the Reasonableness of PDI's Reliance 9

                     b.     Opinion Testimony on Reasonableness of Reliance Is
                            Generally Not Permissible..............................................10

                     c.     Lipow is Not Applying any Standard to His Analysis ...11

                     d.     Even if the Opinions Lipow Intends to Offer Were
                            Permitted, He Has No Basis to Opine on Reasonableness
                            of Pascu's Reliance on Silin's Statements because Lipow
                            Has No Education, Training or Experience Relating to
                            RINs.................................................................................13

       C.     Lipow's Opinions on Existence of a Partnership...............14

              1.     Summary of the Rebuttal Report ...............................15

              2.     A "Partnership Formation" Expert Impermissibly
                     Invades the Role of the Court by Instructing the Jury on
                     the Law...........................................................................15

              3.     Lipow is Not Qualified to Offer an Opinion on
                     Partnership Formation..................................................16

II.    CONCLUSION .................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. International Longshoremen's Union Local No. 10*,
966 F.2d 443 (9th Cir. 1992) .................................................................. 11, 15

*Ameen William Toomey Junior v. Nextel Communications, Inc.*,
2004 U.S. Dist. LEXIS 30793 (N.D. Cal. Sept. 23, 2004)..........................9

*Bourjaily v. United States*,
483 U.S. 171 (1988)....................................................................................9

*Brighton Collectibles, Inc. v. Renaissance Group Int'l*,
2008 U.S. Dist. LEXIS 39707 (S.D. Cal. May 13, 2008) ............................8

*Cargill, Inc. v. Int'l Exch. Servs., LLC*,
2013 WL 76209 (S.D.N.Y. Jan. 8, 2013) ...................................................3

*Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*,
389 F.Supp.2d 1145 (D. Alaska 2005), *aff'd*, 518 F.3d 645 (9th
Cir.2008) ..................................................................................................14

*In re Commercial Money Center, Inc.*,
737 F.Supp.2d 815 (N.D. Ohio 2010) .................................................. 10, 11

*County of Riverside v. Loma Linda University*,
118 Cal. App. 3d 300 (1981) ....................................................................16

*Daubert. Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd.*,
476 F. Supp.2d 1143 (N.D. Cal. 2007).......................................................9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
43 F.3d 1311 (9th Cir. 1995) .......................................................... 8, 11, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)..................................................................................8, 9

*Diviero v. Uniroyal Goodrich Tire Co.*,
114 F.3d 851 (9th Cir. 1997) ......................................................................8

*Domingo v. T.K.*,
289 F.3d 600 (9th Cir. 2002) ......................................................................8

*DSU Med. Corp. v. JMS Co., Ltd.*,
    296 F. Supp.2d 1140 (N.D. Cal. Mar. 26, 2003) .............................................9

*General Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)............................................................................... 8, 12

*Guido v. Koopman*,
    1 Cal. App. 4th 837 (1991) ...........................................................................9

*Holtz v. United Plumbing & Heating Co.*,
    49 Cal. 2d 501 (1957) .................................................................................16

*Hubbard v. Rite Aid Corp.*,
    433 F. Supp.2d 1150 (S.D. Cal. 2006) ..........................................................9

*Kaljian v. Menezes*,
    36 Cal. App. 4th 573 (1995) .......................................................................16

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999)......................................................................................8

*Lansing Trade Group v. Oceanconnect, LLC*,
    2012 WL 2449514 (D. Kan. June 26, 2012) ..................................................3

*North Star Mut. Ins. Co. v. Zurich Ins. Co.*,
    269 F.Supp.2d 1140 (D. Minn. 2003) ........................................................12

*Ralston v. Mortgage Investors Group, Inc.*,
    2011 WL 6002640 (N.D. Cal. Nov. 30, 2011) ...................................... 13, 14

*Salomon v. Andrea C. & Andrea C. Fishing Corp.*,
    2008 U.S. Dist. LEXIS 18720 (S.D. Cal. Mar. 11, 2008)...............................8

*Technology Licensing Corp. v. Gennum Corp.*,
    2004 U.S. Dist. LEXIS 10604 (N.D. Cal. 2004) ............................................9

*United States v. Weitzenhoff*,
    35 F.3d 1275 (9th Cir.1993) .......................................................................15

**Other Authorities**

Federal Rules of Evidence Rule 702 ....................................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE NO. 1

Defendant SCB & Associates, LLC ("SCB") moves to exclude or limit the opinion and testimony of Andrew Lipow ("Lipow") whom Petro-Diamond ("PDI") has identified as its expert witness.

This action relates to a series of transactions in late 2010 through which PDI acquired Renewable Identification Numbers ("RINs) from Absolute Fuels, LLC ("Absolute Fuels") as a part of "sleeve" transactions.  In 2012, the EPA determined that Absolute Fuels RINs were not valid.  SCB brokered six of seven RIN transactions and Progressive Fuels Limited ("Progressive") brokered the other.

PDI contends that SCB's Simon Silin ("Silin") made fraudulent representations and omitted material facts in his communications with PDI's trader, Chelsea Pascu ("Pascu").  Under PDI's theory of the case, Pascu would not have entered into the six RIN transactions had she not relied on Silin's alleged misrepresentations and omissions.  Based on this general premise, PDI asserts claims for fraudulent concealment, constructive fraud, and breach of fiduciary duty.  In support of its breach of fiduciary duty claim, PDI contends that a fiduciary duty arose either from SCB's role as an Over the Counter ("OTC") RIN broker or that SCB and PDI entered into a partnership or joint venture in connection with these RIN transactions.

As SCB's pending Motion for Summary Judgment illustrates, this case largely turns on a limited number of discrete legal questions.  While there are complexities relating to the RIN market and the manner in which RINs are produced and traded, at its core, this case revolves around issues that are commonplace in business litigation, including whether PDI reasonably relied on SCB and whether the parties' relationship constituted a partnership.  Should this Court allow PDI to present its claims to a jury,[1] those questions are similarly straightforward and simply ask the jury to apply the facts to the law, as instructed by the Court.  Most relevant to this motion, the Court would

---

[1] SCB's Motion for Summary Judgment is pending.  While SCB's position is that The Court should decide these issues on summary judgment, this motion *in limine* alternatively assumes that these issues are presented to a jury.

instruct the jury on (1) the law governing reasonable reliance as an element of PDI's fraud claims, and (2) the requirements for forming a partnership.

On these key issues, PDI seeks to offer two Lipow opinions, neither of which is proper:

- In his initial Expert Report ("Initial Report"), Lipow provides an opinion on the "reasonableness" of Pascu's alleged reliance on certain statements made by Silin.  (*See* Declaration of Kent Schmidt ("Schmidt Dec.") Exh. 1 (Initial Report).)

- In his Rebuttal Expert Report ("Rebuttal Report"), Lipow provides an opinion (purportedly rebutting SCB's expert's opinion), that the relationship between SCB and PDI constituted a partnership under the applicable law. (*See* Schmidt Dec. Exh. 2 (Rebuttal Report).)

The Court should fulfill its gatekeeping function by excluding the opinions set forth in Lipow's Initial Report and in Lipow's Rebuttal Report and bar Lipow from testifying.[2]

## I.   **ARGUMENT**

### A.   **Overview of Lipow's Expert Report**

In its April 16, 2014 designation, PDI stated that Lipow will testify on whether it was reasonable for PDI to rely on certain statements of SCB. (Exh. 1 (Initial Report).)  "I have been retained to offer my opinion on [1] the types of information that brokers provide to market participants, including traders; [2] the manner in which such information is provided; and [3] the reasonableness of market participants, including traders such as PDI, relying on this information."[3]  (*Id*. pp. 3.)

---

[2] If these two impermissible opinions are excised from the two Lipow Reports, Lipow would have nothing about which to testify. Should the Court disagree and allow some of Lipow's testimony, the Court should limit his testimony under the applicable legal standards.

[3] Lipow says his first two points—the type of information and manner in which it is provided—are separate opinions, but in the context of the entire Initial Report, and as illuminated through testimony, it is clear that these points are really the purported support for his ultimate opinion, which is the reasonableness of PDI's reliance on Silin's communications.  If PDI takes the position that these are separate opinions that stand alone, SCB contends Lipow's lack of experience in the RIN market also preclude him from offering these opinions.

Pages 2-3 of the Initial Report outline Lipow's background and qualifications.  It is apparent from a review of this portion of the Initial Report, that, while Lipow has general experience in the oil and gas field as a commodities trader, he has no experience with trading RINs, the unique transactions that are at issue here.  (*Id*. p. 2.)  Indeed, the first mention of "RINs" is on the fifth page of the Lipow Report.  (*Id*. p. 5.)

Although Lipow has written several articles on such subjects as Venezuelan oil supply and energy independence, his Initial Report lists no articles that address RINs in general or the process by which RINs are produced and traded in the OTC market.  (*Id*. p. 3.)

His Initial Report next includes an overview of Renewable Fuel Standards and the RIN market with quotations and citations to federal regulations.  (*Id*. pp. 4-6.)  The type of information included in this section is rudimentary.  It is not unlike the summaries of RINs that various District Court decisions have included as an introductory preface in cases addressing RINs.[4]

His Initial Report next summarizes what Lipow contends is his understanding of a broker's role in a commodities market.  (*Id*. pp. 6-7.)  This section—"Broker's Role in the Marketplace"—is apparently a summary of what Lipow believes are the services that any *commodities* broker (not a RIN broker) does for its customer.

This general discussion of commodities brokers is then followed by a description of what Lipow believes RIN brokers do in the marketplace.  (*Id*. pp. 7-12.)  As the support for his RIN broker analysis, Lipow simply visited a few websites of firms that he believed[5] were RIN brokers and copied and pasted portions of their websites in his Initial Report.  (*Id*. 77:17-78:25; 83:10-84:4.)  These websites contain broad and general

---

Moreover, while listed as part of his opinions in the Initial Report, these opinions are not addressed in the pages that follow.

[4] *Lansing Trade Group v. Oceanconnect, LLC*, 2012 WL 2449514 *1 (D. Kan. June 26, 2012) and *Cargill, Inc. v. Int'l Exch. Servs., LLC*, 2013 WL 76209 *1-4 (S.D.N.Y. Jan. 8, 2013).

[5] Lipow stated in his Initial Report that he could not find a website for Kempler and Company (Lipow Report p. 7), but he conceded at his deposition that this entity is not even a RIN broker but rather a RIN trader. (Lipow Depo. 85:22-87:22)

summaries of services offered, not unlike what might be found on a number of financial services companies' websites.  The unremarkable statements suggest that the firms have expertise in the market and are "client focused, innovative, driven and responsive."  (*Id.* pp. 8-9.)  The Initial Report next concludes that services SCB claims to offer on its website are "similar to claims made by other RINs brokers and . . . are consistent with industry expectations for broker conduct."  (*Id.* pp. 8-9.)  As support for this statement, Lipow simply copies and pastes statements from other RIN broker websites beside like statements from SCB's website.  (*Id.* pp. 11-13.)

### B.    Lipow's Opinions on Reasonable Reliance

This so-called analysis is prefatory to the core opinion Lipow intends to offer on reasonable reliance.  He summarizes a general opinion at page 14, which is followed by three more specific opinions, which he offers in the form of questions.  Lipow offers this general opinion:

> Based on my knowledge and experience in the energy markets including the use of brokers to facilitate transactions, it is reasonable for industry participants to rely on these brokerage companies for price information and market intelligence. It is also my opinion that the information should be provided truthfully and accurately to the best of the broker's knowledge, without bias or conflict that might benefit the broker, and that brokers acted in accordance with their advertised procedures.

(Schmidt Dec. Exh. 1 (Initial Report) p. 14.)

The three more specific opinions, offered in the form of questions, are as follows:

- Was it reasonable for PDI to rely on SCB's Statements that there were no known performance issues with Absolute Fuels?  (*Id.* p. 15.)
- Was it reasonable for PDI to rely on SCB Statements suggesting that Absolute Fuels was a legitimate producer based on SCB visits to the [Absolute Fuels] facilities? (*Id.* p. 16.)
- Was it reasonable for PDI to rely on SCB statements suggesting that Absolute Fuels was a legitimate producer due to its feedstock purchases? (*Id.* p. 18.)

Lipow answers each question in the affirmative, concluding that it was reasonable for Pascu to rely on Silin's statements.  (Although not the basis of this motion, we note that Lipow isolates words or phrases, applying his own unique meaning and self-serving edits to quotes in order to conclude that these statements were not truthful.[6])

1. **The Lipow Deposition Testimony Relating to the Foundation for His Opinions in the Initial Report, including Reasonable Reliance**

Lipow's deposition confirmed his utter lack of experience or expertise in the RIN market.  He has never brokered a RIN transaction.  (Schmidt Dec. Exh. 3 (Lipow Depo.) 80:23-81:7.)  He could not recall if he had ever done a "sleeve transaction"—which is the type of transaction at issue in this lawsuit.  (*Id.* 93:22-94:3.)  Lipow has never interviewed RIN brokers to learn about their business and practices, and he did not speak to any of the RIN broker firms whose websites he visited.  (*Id.* at 81:8-82:3.)  His opinions on how brokers and traders interact and whether the reliance was reasonable are thus based solely on his visit to the RIN broker websites and his experience as a commodities broker.  He performed no study or research to determine what correlations and differences might exist between RIN trading and commodities trading.

The deposition further revealed that Lipow's opinions on reasonable reliance were circumscribed to an analysis of the actual communications (IM messages, recorded telephone calls, and emails) between Silin and Pascu.  (*Id.* at 8:15-19; 89:3-23; 116:2-22.)  Both Lipow and PDI's counsel offered testimony on this.

> Q: But my question goes to the reasonableness of their reliance, which is what your opinion addresses.
>
> Did you consider the information contained in the Dun & Bradstreet report, ordered at the time of the commencement of PDI's relationship with Absolute Fuels, in coming to your opinion as to the reasonableness of their reliance?
>
> MR. BEGLAND: Okay. I'm going to just object to the scope and clarify.

---

[6] For example, Lipow opined that a particular statement by Silin to Pascu was false but his Initial Report misquotes the statement, omitting the portion of the exchange in which Pascu asked for his "opinion" on Absolute Fuels.  (Lipow Dep. 133:8-140:10.)  Lipow similarly opined that Silin had misrepresented facts by stating that the "majors" had brokered Absolute Fuels RINs through SCB.  Lipow, however, deleted from his selective quotation, a phrase showing these transactions had been brokered by others, not SCB.  (Lipow Dep. 97:11-111:10.)

You've only been designated an expert for the purposes of testifying about *PDI's reliance on any information provided by SCB*. So make sure your question addresses that and does not go outside the scope of your designation.

MR. JACKSON: Now, you're just trying to coach the witness.

Q: My question is: Did you consider it? It's either a "yes" or "no." It's not that hard.

A: My answer is that for my opinions, I considered *information that was transmitted between SCB and PDI*. And since this piece of information was not transmitted between SCB and PDI, then the answer is no.

(*Id*. at 73:9-74:9 (emphasis added).)

In reaching his opinions on reasonable reliance, Lipow deliberately disregarded what information PDI had or could have obtained from sources other than SCB. The list of categories of information that he disregarded is remarkable. Lipow did not consider

- the nature and size of the transaction in assessing the reasonable of Pascu's reliance. (*Id*. at 113:23-116:1.)
- PDI's resources. (*Id*. at 63:24-65:12.)
- PDI's sophistication. (*Id*. at 65:13-67:1.)
- the transactions' risk parameters. (*Id*. at 68:9-13.)
- PDI's internal compliance requirements (*Id*. at 68:14-18.)

In addition,

- Lipow could not identify any industry publications bearing on this opinion. (*Id*. at 48:25-51:13.)
- He purportedly relied only on publications listed in the Initial Report in coming to his conclusions but was unsure whether any of those publications even relate to biodiesel, let alone RIN trading. (*Id*. at 39:13-40:8.)
- He did not consider the inherent risks in any RINs transaction that the EPA can declare the RINs invalid. (*Id*. at 111:2-20.)
- He did not consider any industry standards that might exist and whether PDI's reasonable reliance complied with such standards. (*Id*. at 51:15-52:12.)

- He did not consider Pascu's background in concluding that she reasonably relied on Silin's statements. (*Id*. at 62:11-15; 63:11-15.)

- He could not articulate any criteria that he applied to this opinion.  In response to the question (which every expert should be prepared to answer): *"What criteria did you use?"* Lipow's counsel instructed:  *"You need not answer the question."*  (*Id*. at 45:10-48:24.)

Lipow's answers to these questions in his depositions were informative, but his lack of answers—either because he was wrongly instructed by PDI's counsel to not answer the question or because he could not answer—were just as telling.  He refused to answer a simple hypothetical question intended to explore his narrow approach to a reasonable reliance determination.

Q Well, let me give you a hypothetical.

Let's assume for purposes of this hypothetical, at the time that Simon Silin contacted Chelsea Pascu about purchasing RINs from Absolute Fuels, Chelsea Pascu was aware in the marketplace, other than from SCB, that Jeff Gunselman was a convicted felon. But they nonetheless -- PDI nonetheless went ahead and purchased the RINs from Absolute Fuels based upon information provided to it by SCB. Would that be reasonable reliance?

A I -- I would need to time to think about our question. I'm not here to offer opinions on hypotheticals.

Q So you're not going to answer my question?

A No, I'm not answering the question.

(*Id*. at 75:6-21.)

### 2.  Lipow's Opinion and Testimony on whether It Was Reasonable for PDI to Rely on SCB's Statements Is Inadmissible

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

To be admissible, expert testimony must be reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993) (*Daubert I*). To satisfy the reliability standard, "[e]xpert testimony must be (1) 'based on sufficient facts or data,' (2) 'the product of reliable principles and methods,' and (3) applied 'reliably' to the facts of the case." *Brighton Collectibles, Inc. v. Renaissance Group Int'l*, 2008 U.S. Dist. LEXIS 39707 *10 (S.D. Cal. May 13, 2008). It must be "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851 (9th Cir. 1997) (affirming exclusion of expert opinion). "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002). It is now clear that the *Daubert* gate-keeping role applies to all expert testimony, not just scientific testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

"The Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation, and is relevant to the task at hand.'" *Salomon v. Andrea C. & Andrea C. Fishing Corp.*, 2008 U.S. Dist. LEXIS 18720, at *4 (S.D. Cal. Mar. 11, 2008) (quoting *Daubert*, 509 U.S. at 597). In determining whether to admit expert evidence, "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Rule 702 Advisory Committee Notes (citing the Ninth Circuit opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (*Daubert II*)). The Ninth Circuit has confirmed that the expert's say-so is not enough: "We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough." *Daubert II*, 43 F.3d at 1319. "The proponent of expert testimony has the burden of proving the factual prerequisites necessary to the admissibility of expert testimony by a preponderance of the evidence." *Hubbard v. Rite Aid Corp.*, 433 F. Supp.2d 1150, 1161 (S.D. Cal. 2006) (citing *Daubert*, 509 U.S. at 592;

Fed R. Evid. 702 Advisory Committee Notes).

"The proponent of the testimony must establish admissibility by a preponderance of the evidence." *DSU Med. Corp. v. JMS Co., Ltd*., 296 F. Supp.2d 1140, 1146 (N.D. Cal. Mar. 26, 2003) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1988)). District courts within the Ninth Circuit have not hesitated to exclude testimony that does not satisfy the reliability and relevance standards of *Daubert*. *Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd*., 476 F. Supp.2d 1143 (N.D. Cal. 2007); *Technology Licensing Corp. v. Gennum Corp*., 2004 U.S. Dist. LEXIS 10604 (N.D. Cal. 2004); *DSU Medical Corp. v. JMS Co., Ltd*., 296 F. Supp.2d 1140 (N.D. Cal. 2003); *Ameen William Toomey Junior v. Nextel Communications, Inc*., 2004 U.S. Dist. LEXIS 30793 (N.D. Cal. Sept. 23, 2004).

Applying these general rules and this framework, there are four reasons the Court should bar Lipow's opinions.

### a.  Lipow's Opinion Does Not Assist the Jury in Making a Determination on the Reasonableness of PDI's Reliance

The first issue is whether it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  To answer that question, one must first consider the jury's role in addressing the element of reasonable reliance.

PDI's fraud theories both require proof that Pascu reasonably relied on Silin's statements.  Because reasonable reliance is an element of both fraud-based causes of action, all fraud claims would require some type of instruction on reasonable reliance. *See* CACI Jury Instructions 1907 and 1908.  Unlike Lipow's analysis, the jury will be instructed according to the law, which requires consideration of all information known and available to PDI.  *See, e.g.*, *Guido v. Koopman*, 1 Cal. App. 4th 837, 843–844 (1991) ("In determining whether one can reasonably or justifiably rely on an alleged misrepresentation, the knowledge, education and experience of the person claiming reliance must be considered.")

Lipow's opinion will not assist the jury, because it is confined to the commonplace words and phrases Silin and Pascu used—words and phrases the jury will be asked to review and assess—without regard to context.  The usurpation of the role of the jury is not harmless but rather presents substantial prejudice that members of the jury will believe that Lipow is qualified as an expert to give an interpretation of the communications (*see* fn. 6 and exhibits cited therein) which should be given greater weight than their ordinary understanding of what was being communicated.

Lipow's opinion is, in short, *ipse dixit*—it is because Lipow says it is, regardless of context.  Lipow's *ipse dixit* will not assist the jury in determining whether Pascu's reliance was reasonable.

### b.      Opinion Testimony on Reasonableness of Reliance Is Generally Not Permissible

Given the nature of a jury determination on reasonable reliance, which encompasses a variety of relevant factors, it is questionable whether a "reliance" expert would ever be appropriate in any context.  The question was addressed in *In re Commercial Money Center, Inc.*, 737 F.Supp.2d 815, (N.D. Ohio 2010).  The Court addressed a variety of expert opinions offered in connection with claims by investors against a surety seeking to recover on surety bonds.  While allowing several expert opinions given the complexities of the financial transactions, the Court decided that experts were precluded from testifying as to the appropriateness of the investors' reliance on the underwriting conducted by the sureties.

> Initially, while there is some utility to Neuschaefer's background description of the expected "division of labor" between a surety and its agent/broker, the Court finds that Neuschaefer's testimony in this area must be limited, in order to weed out inappropriate legal conclusions and avoid jury confusion. Thus, while Neuschaefer will be permitted to testify as to the typical division of functions between the surety underwriter and the broker, Neuschaefer will not be permitted to testify as to (1) any legal "duties" allegedly imposed on the underwriter; (2) the reasonableness of a hypothetical obligee's reliance on the underwriting performed by a surety; or (3) a surety's ability to assert fraud defenses in the context of a surety bond or other instrument.
>
> Additionally, Neuschaefer will not be permitted to express any conclusions to the extent that those conclusions are predicated upon Neuschaefer's own

evaluation of the evidence, rather than upon any special expertise possessed by Mr. Neuschaefer. Thus, Mr. Neuschaefer may not testify as to his view of the facts in this action (including the amount of commissions received by A & M) or the underwriting authority given to A & M), where the basis for Mr. Neuschaefer's opinions is his "review of the depositions," "review of the transaction documents," or "review of the evidence."

737 F.Supp.2d at 853.  Similarly, in *Aguilar v. International Longshoremen's Union Local No. 10,* 966 F.2d 443, 447 (9th Cir. 1992), the court concluded "the reasonableness and foreseeability of the casual workers' reliance . . . were inappropriate subjects for expert testimony."

Lipow's testimony similarly invades the province of the court and the jury. Lacking any experience with RINs, Lipow has simply read testimony, emails, text messages, and transcripts of phone conversations and concluded that it was reasonable for Pascu to rely on Silin.  Lipow does precisely what the jury is charged with doing.

### c.    Lipow is Not Applying any Standard to His Analysis

Because Lipow assumed that he could simply review the communications and come to a decision on the reasonableness of the reliance, he did not apply any standards or consult any learned treatises or publications in coming to his opinion.  The only "research" he did was to visit websites of other brokers.  Lipow is not applying any independent standard to the question of reasonable reliance; rather, he is simply, reading communications, determining what he believes was communicated between the parties, and stating whether it was reasonable to rely on what was said.  As stated above, his opinions are mere *ipse dixit*—he opines it was reasonable to rely because he says so.

In *Daubert II*, the Ninth Circuit noted that a "very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." 43 F.3d at 1317. If the evidence is not based upon independent research, the district court must determine whether there exists any "other objective, verifiable evidence that the testimony is based on scientifically valid principles." *Id*. at 1317-18 (internal quotation marks omitted).

This same type of opinion testimony was rejected in *North Star Mut. Ins. Co. v. Zurich Ins. Co.*, 269 F.Supp.2d 1140, 1148 (D. Minn. 2003).  That case involved questions of insurance broker duties.  The expert (which, unlike Lipow, at least had relevant industry experience), was prepared to testify, based on his review of the discovery, whether it was reasonable for one party to assume that another had certain authority.  The expert in *North Star*, much like Lipow, simply went through the exercise of reading communications between an insurance agent and insurance broker to reach his conclusion and applied no independent standards to the facts presented.  The Court rejected this approach:

> On this Record, we conclude that Rongstad's opinions are inadmissible, under Rule 702, because there has been no showing that his opinion was "the product of reliable principles and methods," as required by that Rule. Instead, North Star seeks to introduce evidence as to how one person who, admittedly, has been in the insurance industry for many years, views a series of communications between an insurance agent, and an insurance broker. Rongstad's "opinion," however, "is connected to existing data only by the *ipse dixit* of the expert," because he intends to testify that the communication was sufficient to bind Zurich, simply because he says it was sufficient. *General Electric Co. v. Joiner*, [522 U.S. 136, 146 (1997)]. Notably Rongstad does not cite any treatise, any industry code of conduct, or anything outside of his self-professed opinion, to demonstrate that the opinion has any legitimacy. Since Rongstad's opinion is not tethered to any independent authority, were we to allow his opinion, the Jury would have no means of ascertaining the reliability of Rongstad's views.

269 F.Supp.2d at 1148.  Similarly, Lipow has admitted that all he is doing is reviewing a series of communications and concluding whether Pascu could reasonably rely on those communications.  Lipow did not consult any learned treatise, periodicals, or other materials to determine that the reliance was reasonable.  Indeed, he studiously avoided straying outside the limited confines of what he was tasked to do and did not consider anything other than the words that were used in the communications between Pascu and Silin.

If this were a case involving a foreign language, or obscure commercial jargon, it might be reasonable to have someone experienced with that commercial jargon opine on what was conveyed by one party and understood by the other.  Here, however, both parties are communicating in ordinary English through normal means and there is

nothing to de-code or translate.  The jury can certainly determine what was said, and, after being properly instructed on reasonable reliance, decide whether Pascu reasonably relied on the statements.

> ### d. Even if the Opinions Lipow Intends to Offer Were Permitted, He Has No Basis to Opine on Reasonableness of Pascu's Reliance on Silin's Statements because Lipow Has No Education, Training or Experience Relating to RINs

Even if it were appropriate for a plaintiff to support its burden of proving reasonable reliance in a fraud action through expert testimony and the expert consulted appropriate standards, Lipow would not be qualified to offer that opinion in this case. The question presented here is whether it was reasonable for a RIN trader such as Pascu to rely on statements of a RIN broker such as Silin in the context of these transactions and speculative trading activities.

The RIN market is unique.  RINs are different from even securities and commodities traded in the Over-the-Counter-Market.  Lipow fails to concede that RIN trades present any unique risks or are materially different from trading commodities. The question then is whether Lipow's general experience in the commodities market qualifies him to testify about the RIN market or anything else pertinent to this case.

That question is similar to an issue presented in *Ralston v. Mortgage Investors Group, Inc.*, 2011 WL 6002640 (N.D. Cal. Nov. 30, 2011), which dealt with the duties of mortgage brokers and whether certain information relating to Pay Option Adjustable Rate Mortgages ("Pay Option ARM Loans") was concealed from customers.  Defendants proffered an expert who had twenty-five years of industry experience as a practicing mortgage broker, including fifteen years running his own brokerage, and substantial experience training, consulting, and communicating with others in the field.  The Court concluded that, while qualified to testify on the general practices of mortgage brokers, the expert was not qualified to offer an opinion on Pay Option ARMs, the specific type of mortgage that was at issue in the case.

There is a marked distinction between years of professional practice resulting in knowledge and experience pertaining to the practiced industry, and experience that is sufficiently specific to a sub-practice within the industry. Unlike his opinions about the general practices of mortgage brokers, the court here cannot ascertain the reliability of D'Alonzo's extrapolations to the "typical" practices of other brokers in offering and explaining Pay Option ARMs. Given the small percentage of his work dedicated to the provision of Option ARM loans and the absence of any testimony on the extent to which D'Alonzo's national work with NAMB may have focused on Option ARM loans, D'Alonzo's opinion that "mortgage brokers typically provided [the same types of] information to their borrower-clients" lacks foundation even based on his own work. Nor does D'Alonzo's general testimony that he talked "a lot" with brokers about Option ARM loans "because it was important to make sure that consumers understood their options," without more, form the basis for expert testimony on the topic.[7]

2011 WL 6002640 *6.

Here, Lipow's experience and knowledge relating to RINs is even more tenuous than this expert's experience and knowledge relating to Pay Option ARM loans.  He has never traded RINs and never engaged in the RIN OTC marketplace, whether as a broker or a trader.

Not only does he lack this professional background, Lipow has not consulted with any RIN brokers or RIN traders to see what type of information they typically provide or obtain.  His only work on this was going to websites of RIN brokers and determining what types of services they offer.  This hardly reflects the level of expertise and knowledge that is required of an expert to qualify under Rule 702.

### C.   Lipow's Opinions on Existence of a Partnership

The Court should also exclude Lipow's second opinion.  This opinion—that SCB and PDI's relationship constitutes a partnership under the law—was ostensibly offered as a rebuttal to SCB's expert, John Gelbard.

---

[7] *Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F.Supp.2d 1145, 1154 (D. Alaska 2005), *aff'd*, 518 F.3d 645 (9th Cir.2008) (excluding expert testimony on a specialized category of insurance policies where, "[d]espite many years of experience in the insurance business" that would allow him to testify as an expert on some aspects of industry standards, the expert lacked the "particularized experience" necessary for qualification to testify as an expert on the topic of the more specialized insurance policy).

14

### 1.     Summary of the Rebuttal Report

In his initial report, Gelbard opined that the trade confirmations and the interactions between Pascu and Silin were typical of a customer-broker relationship. (Schmidt Dec. Exh. 6 (Gelbard Report), p. 9.)  Gelbard's testimony is based on decades of experience in various broker/trader relationships including acting as a broker and as a trader on RIN transactions.  (*Id.* Attachment A.)  He concluded that, while the broker compensation arrangement here was not the ordinary straight commission, it fits within one of several types of compensation arrangements that brokers traditionally enter into with their customers.  (*Id*. at 9.)

### 2.     A "Partnership Formation" Expert Impermissibly Invades the Role of the Court by Instructing the Jury on the Law

Lipow seeks to rebut those opinions by offering a Rebuttal Report that opines that PDI and SCB formed a partnership in connection with the RINs PDI purchased from Absolute Fuels: either several individual partnerships for each transaction or one all-encompassing partnership cover all the transactions.  (Schmidt Dec. Exh. 2 (Rebuttal Report) p. 5 ("It is my belief that the PDI and SCB relationship on the transactions in this litigation was a partnership."); Exh. 3 (Lipow Depo.) 145:10-23.)  Unlike Gelbard, who is not testifying about the creation of a legal relationship but rather applying his years of experience in the relevant market to testify about norms and practices within that context, Lipow's testimony is, at bottom, a legal conclusion.

An expert witness cannot give an opinion as to her legal conclusion, *i.e.,* an opinion on an ultimate issue of law.  *Aguilar,* 966 F.2d at 447.  Similarly, instructing the jury as to the applicable law "is the distinct and exclusive province" of the court.  *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir.1993) (citations and quotation marks omitted).

The existence of a partnership depends on whether the evidence comports with recognized legal requirements (as outlined in SCB's pending Motion for Summary

Judgment, pp. 12-15).  Those elements include: (1) joint interest in a common business; (2) with an understanding to share profits and losses; and (3) a right to joint control. *County of Riverside v. Loma Linda University*, 118 Cal. App. 3d 300, 313 (1981); *Holtz v. United Plumbing & Heating Co.*, 49 Cal. 2d 501, 506-507 (1957); and *Kaljian v. Menezes*, 36 Cal. App. 4th 573, 586 (1995).  The jury can consider all of this evidence and receive instructions on these legal standards.

Offering a "partnership formation" expert is analogous to designating an expert (whether lawyer or layperson) on oral contract formation or on the question of whether a valid lease came into being by virtue of the parties' communications and actions.  No court would ever permit such testimony and this is likewise not a proper subject for expert testimony.

### 3.      Lipow is Not Qualified to Offer an Opinion on Partnership Formation

Even if expert witnesses were allowed to testify about the law, Lipow is not qualified to offer this opinion based on his education, experience or research.  Lipow has no legal training.  (Schmidt Dec. Exh. 3 (Lipow Depo) 55:24-56:15; 37:12-38:3.)  He did not read any cases or legal textbooks on partnership formation.  (*Id*. at 153:14-154:21)  He only reviewed the evidence and applied his layman's understanding of the concept of a partnership.  (*Id*. at 148:10-149:8.)  PDI's counsel objected to this line of questioning on the basis that it calls for a legal conclusion and thereby, perhaps unwittingly, underscored the problem with a layperson testifying on this.  (*Id*. at 149:9-22.)  That layman's understanding apparently comes from the fact that, when he worked for Amoco in the late 1980's or early 1990's, he believes that the company was in joint venture to split profits.  (*Id*. at 155:4-14.)

If there were such a thing as an expert witness on partnership law (*e.g.*, a law professor who teaches about partnerships and joint ventures and is familiar with the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE NO. 1

Uniform Partnership Act), Lipow is not that expert.  Once again, he offers an *ipse dixit* view of the parties' relationship, and the Court should reject it.

In summary, PDI seeks to have Lipow not only invade the province of the Court (by instructing the jury on the requirements of a partnership under the law), but further, invade the province of the jury but giving his layperson's assessment of how the evidence stacks up on that question.  (*Id*. at 143:9-144:6.)

## II. <u>CONCLUSION</u>

Lipow's two opinions, lacking any plausible foundation, do not assist the trier of fact and should be excluded.

Dated:  June 9, 2014                              Respectfully submitted,


By:  */s/ Kent J. Schmidt*
   J David Jackson
   Kent J. Schmidt
   Bryan M. McGarry
   **DORSEY & WHITNEY LLP**
   Attorneys for Defendant
   SCB & ASSOCIATES, LLC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE NO. 1

**CERTIFICATE OF SERVICE**

All Case Participants are registered for the USDC CM/ECF System

*Petro-Diamond Incorporated v. SCB & Associates, et al.*
*Central District of California Case Number 8:12-cv-01893-CJC-ANx*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SCB & ASSOCIATES, LLC'S MOTION IN LIMINE NO. 1 TO EXCLUDE OR LIMIT THE EXPERT REPORT AND OPINION TESTIMONY OF ANDREW LIPOW**

I hereby certify that on June 9, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central District by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Kent J. Schmidt*
Kent J. Schmidt